UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT



| | |
|---|---|
| ELAINE H. FABIASCHI,<br>individually,<br><br>       Plaintiff<br><br>vs.<br><br>CITY OF TORRINGTON, a Connecticut<br>corporation.<br><br>       Defendant | CIVIL ACTION NO.<br><br>3:19cv522 VAB<br><br>APRIL 5, 2019 |

## COMPLAINT

### I.   INTRODUCTION

1. Elaine Fabiaschi had for over twenty-one (21) years worked full time for the City of Torrington as an Administrative Assistant, with her office located at the Torrington City Hall, 140 Main Street, Torrington, CT 06790. She now brings claims for violations of the Federal Age Discrimination in Employment Act (ADEA) 29 U.S.C. §623; and the Connecticut Fair Employment Practices Act (CFEPA), Conn. Gen. Stat. §46a-60(a), stemming from the City of Torrington's discriminatory termination of her employment on April 12, 2018.

2. Elaine Fabiaschi demands a jury trial on all claims so triable.

### II.   JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331.

4. Venue is proper in this District under 28 U.S.C. § 1391 (b) (2), because a substantial part of the events or omissions giving rise to the asserted claims occurred here.

5. This court has supplemental jurisdiction over the Plaintiff's State Law Claims, pursuant

1

Case 3:19-cv-00522-VAB   Document 1   Filed 04/08/19   Page 2 of 11

to 28 U.S.C. §1367, as they form part of the same case or controversy as the Federal Law Claims.

### III.   PARTIES

6.     At all material times Elaine Fabiaschi ("FABIASCHI") is and was a citizen of the State of Connecticut, residing in Torrington, Connecticut.

7.     The defendant City of Torrington ("CITY"), is and was a Connecticut municipal corporation, having its principal place of business at 140 Main Street, Torrington, CT 06790. The CITY employed more than 200 employees, including the plaintiff.

8.     At all material times, Ms. Kelley Pleil ("PLEIF') is and was Assistant Director of Human Resources ("ADHR") for the defendant CITY. At all material times herein PLEIF was acting in her official capacity as an agent and representative for the CITY, and at all times was acting within the scope of her agency. Consistent with her employment she had the authority and knowledge, either express or implied, to act on behalf of the CITY.   .

### IV.   EXHAUSTION OF ADMINISTRATIVE REMEDIES

9.   **On** May 14, 2018, FABIASCHI filed a complaint in a timely manner with the Connecticut Commission on Human Rights and Opportunities (CHRO) alleging discrimination and violations of her rights under the ADEA, 29 U.S.C. §623 as amended  the OWBPA 29 U.S.C.S.§ 626(f)(1)(A)-(F)  and CFEPA), Conn. Gen. Stat. §46a-60(a). The complaint was also filed with the Federal Equal Opportunity Commission.

10. The CHRO Complaint was filed in a timely manner, as it was filed within 180 days of the date that she was notified of her termination, April 12th, 2018.

11. FABIASCHI received  a Release of Jurisdiction from the CHRO dated January 17, 2019 and files the present complaint within 90 days of the Release of Jurisdiction from the CHRO.

2

## V.    STATEMENT OF FACTS

12.    FABIASCHI was a full-time employee of the CITY commencing on December 16, 1996 and continuing until April 12, 2018 when she was suddenly and without warning terminated.

13.    As a full-time employee FABIASCHI was covered by the Consolidated Omnibus Budget Reconciliation Act, COBRA[1].

14.    On or about April 12, 2018, at approximately 1:15 p.m.,  FABIASCHI  fell in her office while at work, suffering injuries to her left ankle, toes, and right knee. An Employer's First Report of Occupational Injury or Illness Form (FRI Form) was immediately and appropriately filed with the CITY.

15.    At approximately 2:45 p.m.  PLEIF came to the plaintiff's office for an impromptu meeting wherein she informed  that the CITY would be accepting and· authorizing the FRI form. At this meeting PHEIL was accompanied by a Ms. Chrissy Upton, an employee of the CITY, who worked as a Purchasing/Payroll Clerk.,

[1] *The Consolidated Omnibus Budget Reconciliation Act (COBRA) gives workers and their families who lose their health benefits the right to choose to continue group health benefits provided by their group health plan for limited periods of time under certain circumstances such as voluntary or involuntary job loss, reduction in the hours worked, transition between jobs, death, divorce, and other life events. Qualified individuals may be required to pay the entire premium for coverage up to 102 percent of the cost to the P plan.*

16.   After PLEIF acknowledged that the CITY was accepting the FRI Form, PLEIF immediately stated the following: "Your position has been eliminated.  You can either take a layoff and pay COBRA or take early retirement". PLEIF then repeated her statement a second time. FABIASCHI was stunned and asked, "Are you firing me?",  PLEIF said " no",  then repeated the same statement a third time; "Your position has been eliminated.  You can either take the layoff and pay COBRA or take early retirement."

17.   FABIASCHI asked if she could have time to think about it and PLEIF stated; "There is no thinking, your position has been eliminated, you can pick one or the other option, now."

18.   FABIASCHI asked if there was some type of paperwork that she could review, and PLEIF stated: "There is no paperwork, your position has been eliminated, you can pick one or the other option, now."

19.   FABIASCHI pleaded that she could  not live on early retirement. PLEIF declared that FABIASCHI could now receive social security, that her  position had been eliminated, and she could pick one or the other option. PLEIF also declared that if FABIASCHI did not choose early retirement immediately, they would take her pension option off the table.

20.  PLEIF  then further declared that ,  "You must be out the door in the next 10 minutes, by 3 PM."  PLEIF then produced a blank piece of paper and instructed the FABIASCHI to "write on it that you accepted early retirement".

21.   FABIASCHI was shocked and devastated by PLEIF'S conduct. She was compelled to make her decision immediately and be out of the building within minutes.  No agreement or retirement documents were presented. FABIASCHI had no opportunity to review any documents or to review these circumstances with an attorney. Faced with this situation she scribbled a message onto the blank sheet of paper that she was being forced into early retirement.

She was not notified orally or in writing that she had the right to revoke her decision within seven (7) days. FABIASCHI has never received a plan, agreement or any paperwork as required by the OWBPA.

22.     FABIASCHI was 62 years old on the day she was terminated, her age was the motivating factor for the termination;  she was eligible for full retirement benefits in April 2022.

23.     During her 21 years of service with the CITY, FABIASCHI consistently received satisfactory and above average annual reviews for her job performance.

24.     On March 30, 2018 FABIASCHI turned 62 years old. Twelve days later she sustained minor injuries from falling at work and within two hours of falling she went from being a high-quality employee to being terminated.

## FIRST COUNT,
### (Discrimination in Violation of Age Discrimination in Employment Act, 29 U.S.C. § 623)

1.-24.     FABIASCHI re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 24. , above.


25.     The CITY is an "employer" as that term is defined in the ADEA. (29 U.S.C. 630(b)).

26.     FABIASCHI qualifies as "eligible" defined in the ADEA. (29 U.S.C. 626 (f)(1)(A)).

27.     The CITY is responsible for FABIASCHI'S losses under the ADEA as amended by the OWBPA. 29 U.S.C. 621-634.

28.     The CITY is further responsible by failing to provide a written agreement which contain a written a notice of her rights and claims as covered by the ADEA and OWBPA, 29 U.S.C.S.§ 626(f)(1)(A)-(F). The ADEA and OWBPA mandates that a waiver of rights and claims

5

covered by the ADEA and OWBPA must be made knowingly and voluntarily. 29 U.S.C.S.§ 626(f)(1). Any waiver contained in an agreement must be written in a manner calculated to be understood by such individual, or by the average individual eligible to participate. Id., § 626(f)(1)(A).

29.     A waiver must specifically refer to an employee's rights and claims as covered by the ADEA and OWBPA. Id., § 626 (f)(1)(B).

30.     Such waiver of rights or claims must be made only in exchange for consideration in addition to what the individual is already entitled. Id., § 626 (f)(1)(D).

31.     Employers must not entice employees to waive rights or claims covered by the ADEA and OWBPA. Id., § 626(f)(1)(A).

32.     The ADEA and OWBPA required to notify FABIASCHI that she had twenty-one (21) days within which to consider whether or not to accept or reject a proffered agreement. Employers must encourage the subject employee, in writing, to seek the aid of an attorney prior to signing any agreement. Id § 626 (f)(1)(E) and (F)(i).

33.     The CITY violated the ADEA and OWBPA by failing to notify FABIASCHI of her right to have 21 days to consider whether or not to accept or reject a proffered agreement. The CITY violated the ADEA and OWBPA by failing to encourage FABIASCHI, in writing to seek the aid of an attorney prior to deciding whether or not to accept or reject a proffered agreement. The CITY also violated the ADEA and OWBPA in not offering consideration for waiver in addition to what FABIASCHI was already entitled.

34.     The ADEA and OWBPA also requires the City to notify the plaintiff that she was entitled to a mandatory seven 7-day revocation period within which to consider whether or not to revoke her approval of the agreement. 29 U.S.C.S § 626 (f)(1)(G).

35.    The CITY violated the ADEA and OWBPA by failing to afford the FABIASCHI the mandatory seven 7-day revocation period within which to consider whether or not to revoke her approval of the agreement.

36. Waiver is not considered knowing and voluntary without a reasonable period of time to consider the agreement. 29 U.S.C.S § 626 (f)(2).   FABIASCHI was afforded only fifteen minutes to consider her options. This is not a reasonable period of time.

37.    As the result of her termination, FABIASCHI has incurred, and continues to incur, loss of wages consisting of front pay and back pay from the effective date of termination until her regular retirement date in December 2022, loss of fringe medical insurance and pension, emotional distress including stress, anxiety, and depression: FABIASCHI also claims costs and attorneys' fees.

## SECOND COUNT;

### (Discrimination in Violation of Age Discrimination in Employment Act, 29 U.S.C. § 623; Liquidated Damages, 19 U.S.C. 626(b))

1-37.    FABIASCHI re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 37, above of the First Count as if fully plead herein.

38.    The CITY terminated FABIASCHI because of her age.

39.    THE CITY'S unlawful conduct was committed with willful disregard for Fabiaschi's right to be free from age discrimination.

40.    As a result of the CITY'S unlawful conduct, the CITY, acted willfully with reckless disregard of FABIASCHI'S rights and FABIASCHI claims liquidated damages.

## THIRD COUNT

## (Discrimination in Violation of The Connecticut Fair Employment Act.

## Conn. Gen Stat. § 62346a-60(a)(1)

1-41.    FABIASCHI re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 41, above of the First Count as if fully pled herein.

42.    FABIASCHI'S age was the motivating factor in her termination by the CITY.

43.    As a result of the CITY'S unlawful conduct, FABIASCHI has suffered and will continue to suffer both economic and non-economic harm.

## FOURTH COUNT,

## Negligent Infliction of Emotional Distress

1-41.    FABIASCHI re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 41, of the First Count as if fully pled herein.

31.    The CITY'S agents knew or should have known that emotional distress was a likely result of their conduct when they terminated FABIASCHI'S employment. More specifically when they denied FABIASCHI her rights under the ADEA and OWBPA. Id., § 626 (f)(1)(B).

32.    The CITY'S agents knew or should have known that emotional distress was a likely result of their conduct when they terminated FABIASCHI'S employment after she had just reported being injured after falling at her desk.

33.    The CITY'S agents knew or should have known that emotional distress was a likely result of their conduct when they terminated FABIASCHI'S employment and threatened her with the loss of her retirement benefits unless she immediately agreed to  an accept earlier retirement.

8

34. The CITY'S agents knew or should have known that emotional distress was a likely result of their conduct when they terminate FABIASCHI'S employment and ordered her to leave the building within 10 minutes.

## AS TO ALL CLAIMS

WHEREFORE, the plaintiff prays that the Court herein grant him the following relief:

1. Compensatory damages, $ 1,509,000, including but not limited to <u>lost wages consisting of Front Pay and Back Pay from the effective date of termination to the point of her regular Retirement date in December 2022, Loss of Medical Insurance Benefits. Medical and Psychological treatment for: stress, anxiety, and depression, resulting from her termination by the defendant. . lost pension benefits and any interest on the amount thereon as provided in the 29 U.S.C. 621-634, (ADEA/OWBPA). The costs also include attorneys' fees. She has suffered a significant loss of her quality of life, all within the meaning of Such damages in an amount to be proved at trial but is believed to exceed $ 1,509,000,00.</u>

2. Compensatory damages for the depravation of her rights by the defendant who violated the requirements of requirements and mandates of <u>29 U.S.C. 621-634, (ADEA and OWBPA). The plaintiff is specifically the type of employee that was meant to be protected by the above statue.</u>

3. Punitive damages for Fraudulent Inducement $1,000,000

4. Damages for Defendant's Breach of Duty of Good Faith and Fair Dealing

5. Damages for Defendant's violation of Connecticut WCC Act Title 31 - Chapter 568, Discharge or Discrimination Prohibited, Right of Action, § 31-290a.

6. Attorney's Fees, and reasonable costs pursuant to 42 U.S.C. Section 1988 and the Laws of the State of Connecticut;

7. Such relief as the Court deems just, proper and equitable.

Dated:  APRIL 5, 2019

10

PLAINTIFF, ELAINE H. FABIASCHI

By _____
Kevin E. Creed
Her Attorney
Creed Law Firm, LLC
653 Terryville Ave
Bristol, CT 06010
Phone 860-583-4800
Federal Bar No.: CT 18668

Please enter our appearances on behalf of the Plaintiff in this matter.
Jury Trial Requested