UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ELAINE FABIASCHI,
    *Plaintiff*,

v.

CITY OF TORRINGTON,
    *Defendant.*

No. 3:19-cv-522 (VAB)

**RULING AND ORDER FOR MOTION FOR LEAVE TO AMEND**

Elaine Fabiaschi ("Plaintiff") has sued her former employer, the City of Torrington ("Defendant," "Torrington," or "the City"), for allegedly discriminating against her on the basis of her age in violation of federal and state law.

Ms. Fabiaschi has moved for leave to file an amended complaint. This is Ms. Fabiaschi's first such motion.

For the following reasons, the plaintiff's motion for leave to amend the Complaint is **GRANTED.**

### I.     FACTUAL AND PROCEDURAL BACKGROUND

#### A.     Factual Allegations[1]

Elaine Fabiaschi allegedly worked as an Administrative Assistant for the City of Torrington for over twenty-one (21) years, from December 1996 until April 2018. Am. Compl. ¶ 1, ECF No. 47 (Dec. 12, 2019).

Ms. Fabiaschi alleges that, in the several years before her termination, she worked as an Administrative Assistant to Erin Howard ("Howard"), the "Director of the Office of Economic [sic]," and Jamie LeMere ("LeMere"), the Director of Corporation Counsel. *Id.* ¶ 12. She alleges

---

[1] All factual allegations are drawn from the Amended Complaint, ECF No. 47 at 4-18 (Dec. 12, 2019).

that she participated in the City's Traditional Retirement Plan by contributing a portion of her salary to a retirement investment fund where the City contributed to the plan by a percentage calculation. *Id.* ¶ 13. For several years before Ms. Fabiaschi's termination, the Traditional Retirement Plan allegedly was no longer offered to new hires, who were instead offered "less generous and less expensive" investment plans. *Id.* ¶ 14. Ms. Fabiaschi alleges that the City has, and has had for years, an established pattern of directing discriminatory animus against its older employees, as well as improperly forcing the early retirement of older workers before their full retirement benefits vested under the Traditional Retirement Plan. *Id.* ¶ 16.

Several months before Ms. Fabiaschi was terminated, Ms. Howard allegedly commented while on the phone in her office that "I am a millennial and this is our time now, and we need rid [sic] ourselves of those 'legacy behaviors.'" *Id.* ¶ 17. Ms. Fabiaschi alleges that this remark reflects the bias against older workers held by Ms. Howard, Mayor Carbone, and Kelley Pleil,[2] Assistant Director of Human Resources for the City, *id.* ¶ 10, and evinces a conspiracy among Torrington officials to force older workers into early retirement before their full retirement benefits vest. *Id.* Ms. Howard allegedly treated other older employees in the same manner as she did Ms. Fabiaschi. *Id.* ¶ 18.

On or about April 12, 2018, around 1:15 p.m., Ms. Fabiaschi allegedly fell in her office at work, "suffering injuries to her left ankle, toes, and right knee." *Id.* ¶ 19. "An Employer's First Report of Occupational Injury or Illness Form (FRI Form) was immediately and appropriately filed with the City." *Id*.

At about 2:45 p.m. the same day, Ms. Pleil allegedly came to Ms. Fabiaschi's office and told her that the City would be "accepting and authorizing" her FRI form, *id.* ¶ 20.

---

[2] The Amended Complaint alternates spellings between "Pleil" and "Pliel." The Court will use "Pleil."

Ms. Pleil then allegedly told Ms. Fabiaschi that her "position ha[d] been eliminated" and that she could "either take a layoff and pay COBRA or take early retirement." *Id.* ¶ 21. Ms. Fabiaschi allegedly was stunned and asked, "Are you firing me?" *Id.* Ms. Pleil allegedly said no, but she repeated her statement that Ms. Fabiaschi's "position ha[d] been eliminated" and that she could "either take a layoff and pay COBRA or take early retirement." *Id.*

Ms. Fabiaschi allegedly asked if she could have time to think about it, and Ms. Pleil allegedly responded, "There is no thinking, your position has been eliminated, you can pick one or the other option, now." *Id.* ¶ 22. Ms. Fabiaschi allegedly asked if there was some kind of paperwork she could review, but Ms. Pleil allegedly responded, "There is no paperwork, your position has been eliminated, you can pick one or the other option, now." *Id.* ¶ 23.

Ms. Fabiaschi allegedly "pleaded that she could not live on early retirement." *Id.* ¶ 24. Ms. Pleil allegedly responded that Ms. Fabiaschi "could now receive social security, that her position had been eliminated, and she could pick one or the other option." *Id.* Ms. Pleil allegedly stated further that if Ms. Fabiaschi did not choose early retirement immediately, "they would take her pension option off the table." *Id.*

Ms. Pleil allegedly then told Ms. Fabiaschi that she would have to be "out the door in the next 10 minutes, by 3 PM." *Id.* ¶ 25. At that point, Ms. Pleil allegedly "produced a blank piece of paper and instructed [Ms.] Fabiaschi to 'write on it that you accepted early retirement.'" *Id.*

Allegedly "shocked and devastated by [Ms. Pleil's] conduct," *id.* ¶ 26, Ms. Fabiaschi "was compelled to make her decision immediately and be out of the building within minutes" without being presented with any agreement or retirement documents and without an opportunity to review any documents or confer with an attorney. *Id.* "Faced with this situation [Ms.

Fabiaschi] scribbled a message onto the blank sheet of paper that she was being forced into early retirement." *Id.*

Ms. Fabiaschi alleges that Ms. Pleil's actions were "undertaken by her at the direction of and/or with the express or implicit approval of, Mayor Carbone, [Ms.] Howard and other officials of the City of Torrington" in furtherance of an "established pattern and practice of harassing and disparaging, and directing biased and discriminatory animus against, its older employees, in furtherance of the defendant's efforts to force the early retirement of older workers, including the [P]laintiff, before their full retirement benefits vested." *Id.* ¶ 27.

On March 30, 2018, Ms. Fabiaschi allegedly turned sixty-two years old. *Id.* ¶ 29. During her twenty-one years of service, Ms. Fabiaschi allegedly "consistently received satisfactory and above average annual reviews for her job performance." *Id.* ¶ 28. She alleges that she was terminated twelve days after her sixty-second birthday and within two hours after her fall at work. *Id.* Ms. Fabiaschi allegedly would have been eligible for full retirement benefits in 2021. *Id.* ¶ 30. She alleges that age was the motivating factor for her termination. *Id.*

In the several months leading up to her termination, Ms. Fabiaschi alleges that Ms. Howard, a "self-proclaimed 'millennial'" in her thirties, treated her unfairly by engaging in a pattern of deliberately withholding work from her and then criticizing her for failing to do her job and that these actions were deliberately undertaken to obscure the real reason for her termination and to provide justification for taking such action. *Id.* ¶¶ 35-37.

Ms. Fabiaschi alleges that this behavior stood in stark contrast to Defendants' alleged assertion that her position was eliminated due to a "lack of work." *Id.* ¶ 38. She alleges that there was ample work to do in her administrative assistant role for Corporation Counsel, Jamie LaMere, but that the Mayor had moved the Corporation Counsel's office to the Mayor's office

suite and work was not being channeled to Ms. Fabiaschi, as it previously had. *Id.* ¶ 39. Ms. Fabiaschi alleges that the Mayor's conduct was also part of the City's pattern of discrimination and that deliberately withholding work from Ms. Fabiaschi provided justification for the alleged unlawful termination. *Id.* ¶ 40.

Ms. Fabiaschi further alleges that the City falsely claimed before the Connecticut Commission on Human Rights and Opportunities ("CHRO") that it was unable to find another position for her. *Id.* ¶ 41. She alleges an Assistant Clerk position formerly held by Carol Anderson became available in late 2017, when Ms. Anderson was promoted. *Id.* ¶ 41. Ms. Anderson allegedly approached Ms. Fabiaschi to ask if she was interested in the position, but Ms. Fabiaschi allegedly declined because she was very busy in her current position and was not aware that her position was about to be eliminated. *Id.* She further alleges that she should have been offered the position before her position was supposedly eliminated. *Id.* ¶ 43. Additionally, Mayor Carbone allegedly asked Ms. Anderson to consider hiring a younger male. *Id.* ¶ 42. But ultimately Ms. Anderson sought to hire someone from the outside. *Id.*

Ms. Anderson allegedly confronted the Mayor to complain about the manner in which Ms. Fabiaschi was terminated, and the Mayor allegedly stated to Ms. Anderson that "we were just waiting for her birthday before we let her go." *Id.* ¶ 44.

Ms. Fabiaschi also alleges that the City's claim that she was eliminated due to a "budget crisis" is also false. *Id.* ¶ 45. She alleges that it is not reasonably possible that there was no longer a need for administrative assistance for the Director of Economic Development and Corporation Counsel because there was enough work to justify her full-time position at the time she was discharged. *Id* ¶ 45(a). She also alleges that publicly available documents on the City's website demonstrate that any perceived budget crisis due to snow removal costs is false because snow

5

removal costs were "more than offset by other savings," and that the Mayor specifically stated that she did not recommend any personnel cuts to offset a budget shortage. *Id.* ¶ 45(b).

**B.      Procedural History**

On May 14, 2018, Ms. Fabiaschi allegedly filed a complaint with the Connecticut Commission on Human Rights and Opportunities ("CHRO") as well as the federal Equal Employment Opportunities Commission ("EEOC"). Am. Compl. ¶ 32. Ms. Fabiaschi allegedly received a Release of Jurisdiction from the CHRO on January 17, 2019. *Id.* ¶ 33.

On April 8, 2019, Ms. Fabiaschi sued the City of Torrington in this Court, Compl., ECF No. 1 (Apr. 8, 2019), alleging that the City of Torrington terminated her employment based on her age, in violation of the federal Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623, and the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60. *Id.* ¶ 1.

On May 31, 2019, Torrington filed a motion to dismiss and/or strike the Complaint in its entirety. Mot. to Dismiss, ECF No. 15 (May 31, 2019). In support of its motion to dismiss, Torrington filed a memorandum of law, Mem. of Law in Supp. of Mot. to Dismiss, ECF No. 15-1 (May 31, 2019) ("Def.'s Mem."); and an exhibit consisting of a letter from Plaintiff's counsel to the Chairman of the Connecticut Compensation Review Board. Def.'s Ex. A, ECF No. 15-2 (Letter from Kevin Creed to Chairman John A. Mastropietro (Jan. 10, 2018) ("Counsel's Letter to Conn. Comp. Review Bd. Chair")).

On September 19, 2019, new counsel entered an appearance on behalf of Ms. Fabiaschi, stating that Ms. Fabiaschi's prior counsel was no longer admitted to practice before this Court. Notice of Appearance, ECF No. 36 (Sept. 19, 2019).

On October 23, 2019, Ms. Fabiaschi filed an objection to Torrington's motion to dismiss. Obj. to Mot. to Dismiss, ECF No. 39 (Oct. 23, 2019) ("Pl.'s Obj.").

On November 14, 2019, Torrington filed a reply memorandum in support of its motion to dismiss. Mem. in Supp. of Mot. to Dismiss, ECF No. 45 (Nov. 14, 2019) ("Def.'s Reply").

On December 5, 2019, the Court held a telephonic status conference. Minute Entry, ECF No. 48 (Jan. 6, 2020). During the conference, the Court permitted Ms. Fabiaschi to file a motion for leave to amend the complaint.

On December 13, 2019, Ms. Fabiaschi filed a motion for leave to file an amended complaint with the proposed amended pleading attached. Mot. For Leave to File Am. Compl., ECF No. 47 at 1-2 (Dec. 13, 2019) ("Pl.'s Mot. for Leave to Amend").

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 15(a) provides that parties may either amend pleadings once as a matter of course within twenty-one days after serving the pleading or, after twenty-one days, move for leave to amend. Fed. R. Civ. P. 15(a). The "court should freely give leave when justice so requires." *Id.* If the underlying facts or circumstances relied upon by a party may be a proper subject of relief, that party should be given the opportunity to test its claims on the merits. *Foman v. Davis*, 371 U.S. 178, 182 (1962). In the absence of any apparent or declared reason for denying leave, the leave sought should be "freely given." *Id.*

While the decision to grant leave to amend is within the discretion of the court, the court must give some "justifying reason" if it denies leave. *Id.* at 182. Reasons for denying leave to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of amendment." *Id.*; *see also Lucente*

*v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (noting leave to amend may be denied when amendment is "unlikely to be productive," such as when an amendment is "futile" and "could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)") (internal citations omitted); *Park B. Smith, Inc. v. CHF Indus. Inc.*, 811 F. Supp. 2d 766, 779 (S.D.N.Y. 2011) ("While mere delay, absent a showing of bad faith or undue prejudice, is not enough for a district court to deny leave to amend, the longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice." (internal quotation marks omitted)).

But where a party seeks leave to amend after the deadline to amend pleadings has passed, the court has greater discretion to deny leave to amend. A moving party may be required to demonstrate that there is "good cause" both to amend the scheduling order and to amend their pleading. *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000) ("[D]espite the lenient standard of Rule 15(a), a district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause. Moreover, we agree with these courts that a finding of 'good cause' depends on the diligence of the moving party." (citations collecting cases omitted)); *accord Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 243 (2d Cir. 2007) ("[A] district court, despite the standard of the second sentence of Rule 15(a), does not abuse its discretion in denying leave to amend the pleadings where the moving party has failed to establish good cause, as required by Rule 16(b), to amend the pleadings after the deadline set in the scheduling order. . . . '[G]ood cause' depends on the diligence of the moving party.").

In exercising their discretion under Rule 16(b), courts "also may consider other relevant factors including, in particular, whether allowing the amendment of the pleading at this stage of the litigation will prejudice defendants." *Kassner*, 496 F.3d at 243.

### III. DISCUSSION

Ms. Fabiaschi's proposed amendments consist of the following: (1) the elimination of the fourth count of the complaint for negligent infliction of emotional distress; (2) the elimination of the second count of the complaint for liquidated damages under the ADEA; (3) the addition of a request for liquidated damages under the prayer for relief; (3) the significant addition of facts in support of her claim under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623; and (4) the elimination of any reference to or reliance on the Older Workers Benefits Protection Act (OWBPA), 29 U.S.C. § 626(f), in relation to her ADEA claim.

The Supreme Court has established a burden-shifting framework to evaluate claims of employment discrimination and outlined the elements of a prima facie case in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). In the Second Circuit a plaintiff "must show (1) that she was within the protected age group, (2) that she was qualified for the position, (3) that she experienced an adverse employment action, and (4) that such action occurred under circumstances giving rise to an inference of discrimination." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 107 (2d Cir. 2010) (internal citation omitted). A plaintiff's burden for establishing a prima facie case is *de minimis*. *Woodman v. WWOR–TV, Inc.*, 411 F.3d 69, 76 (2d Cir. 2005) ("We have characterized plaintiff's prima facie burden as minimal and *de minimis*.").

At the pleading stage of a suit involving employment discrimination, "allegation of facts supporting a minimal plausible inference of discriminatory intent suffices . . . because this entitles the plaintiff to the temporary presumption of *McDonnell Douglas* until the defendant

9

furnishes its asserted reasons for its action against the plaintiff." *Doe v. Columbia Univ.*, 831 F.3d 46, 55 (2d Cir. 2016) (citing *Dawson v. N.Y.C. Transit Auth.*, 624 F. App'x 763, 770 (2d Cir. 2015) (summary order) ("At the pleading stage, district courts would do well to remember th[e] exceedingly low burden that discrimination plaintiffs face. . . .")). Consequently, "what must be plausibly supported by facts alleged in the complaint is that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn v. City of New York*, 795 F.3d 297, 307 (2d Cir. 2015). The allegations need not, however, give "plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination." *Id.* ("[T]he Supreme Court ruled [in *McDonnell Douglas*] that, in the initial phase of the case, the plaintiff can establish a prima facie case without evidence sufficient to show discriminatory motivation.").

Ms. Fabiaschi has alleged facts in her Amended Complaint sufficient to support a plausible employment discrimination claim. She has alleged that she was sixty-two years old, an age that is within the protection of the statute, Am. Compl. ¶ 29; *see Gorzynski*, 596 F.3d at 107 (finding that an ADEA plaintiff met the protected age group prong by being "over forty years old"); 29 U.S.C.A. § 631(a) (limiting ADEA protections to individuals over forty years of age); and has alleged that she had "consistently received satisfactory and above average annual reviews for her job performance" for the twenty-one years she allegedly worked for the City prior to her termination, Am. Compl. ¶ 28, indicating that she was qualified for the position. She also has alleged an adverse employment action, having allegedly been forced to leave her job. *Id.* ¶ 26; *see, e.g.*, *A Green v. E. Haven Police Dep't*, No. 3:16-cv-00321 (VLB), 2017 WL 6498144, at *7 (D. Conn. Dec. 19, 2017) (noting that an employee faces a materially adverse action to her

10

employment when she is forced to quit involuntarily through the creation of a hostile work environment (citing *Stetson v. NYNEX Serv. Co.*, 995 F.2d 355, 359 (2d Cir. 1993)); *DeLorco v. Waveny Care Ctr, Inc.*, No. 3:16-cv-01594 (VLB), 2018 WL 4078276, at *4 (D. Conn. Aug. 27, 2018) (same).

Ms. Fabiaschi has also alleged (1) that her supervisor deliberately withheld work from her and then criticized her job performance in the months leading up to her discharge, Am. Compl. ¶¶ 36-38; (2) that she was not considered for another administrative position for which she was qualified at the time she was discharged, *id.* ¶¶ 41-43, (3) that certain supervisors made comments that may have negatively reflected on her age, *id.* ¶¶ 17, 24, 44, and (4) that her position could not have been eliminated due budget cuts because public documents indicate that the City did not recommend personnel cuts in response to a perceived budget crisis, *id.* ¶¶ 45. These facts are sufficient to provide minimal support for the proposition that her employer was motivated by discriminatory intent. *See Columbia Univ.*, 831 F.3d at 55.

Accordingly, Ms. Fabiaschi's proposed amendments present a plausible claim of employment discrimination, and the Court will grant her motion to amend the complaint.

## IV.     CONCLUSION

For the foregoing reasons, Ms. Fabiaschi's motion for leave to amend her Complaint is **GRANTED**.

**SO ORDERED** at Bridgeport, Connecticut, this 31st day of January, 2020.

    /s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE